## ST. LOUIS-S. F. RY. CO. v. ANDREWS, Co. Treas.

No. 17858.   Opinion Filed April, 10, 1928.

Rehearing Denied July 9, 1929.

E. T. Miller and Stuart, Cruce & Franklin, for plaintiff in error.

Roy R. Carver, Co. Atty., Roy W. Cox, City Atty., H. S. Burke, John S. Burger, and Lydick, McPherren & Jordan, for defendant in error.

HARRISON, J. Plaintiff in error brought this action to recover certain taxes which it had paid under protest to the county treasurer of Kay county, the tax in question being certain levies for the year 1925.

Five causes of action were alleged, the first being: That a levy of 5.204 mills had been made for current expenses and county highway funds; that 4.25 mills is the maximum rate allowed by law to be levied for such purpose without a vote of the people authorizing a greater levy, and the excise board not having been so authorized, the excess, amounting to .954 mills, was illegal. Wherefore plaintiff prayed judgment for the excess.

The second cause of action was that one mill of the total levy for said county was to create a fund for the construction of a county courthouse; that such levy having been made under the purported authority of chapter 13, S. L. 1925, is void, because the subject-matter of the act is not clearly expressed in the title thereof, as required by section 57, art. 5, of the Constitution; and that such levy was further illegal because not having been authorized by a vote of the people. Wherefore plaintiff prayed judgment for the taxes paid under such levy.

The third cause of action was that 5.78 mills of the levy made for the benefit of the city of Blackwell was for the purpose of paying interest and creating a sinking fund for certain municipal bonds which had been issued by the city of Blackwell for the purpose of constructing a public utility, consisting of waterworks, owned exclusively by the city; that said levy, to the extent of 5.78 mills, was void for the reason that under section 4507, C. S. 1921, the city should have charged water rates sufficient to pay the interest on and to create a sinking fund for such bonds without making any levy for such purpose, and was without authority of law to make a levy for such purpose, and therefore said levy was in violation of the statute and void. Wherefore plaintiff prayed judgment for the taxes paid under such levy.

The fourth cause of action was that 1.3 mills of the levy made for the benefit of the city of Blackwell was void, because in excess of the estimated needs submitted by said city to the county excise board. Wherefore plaintiff prayed judgment for the taxes paid under said levy.

Fifth cause of action was that 4.7 mills of the levy made by the county excise board for the benefit of school district 45 was void, because the fund for which such levy was made had a surplus balance on hand sufficient to meet the estimated needs for such school district without making any levy. Wherefore plaintiff prayed for the taxes paid under this levy.

It appears that plaintiff paid, under protest, the first half of its taxes in due time, and brought action to recover the alleged illegal taxes, and that before the cause was tried the last half of the taxes for that year became due, and plaintiff in due time paid said last half under protest, and by supplemental petition brought suit to recover the last half of the taxes.

It is conceded that plaintiff has fully complied with the statutes in bringing this action.

1. Under the agreed statement of facts the trial court gave judgment in favor of plaintiff in error on the first cause of action for all the levy in excess of 4.26 mills, which excess was .954 mills. Judgment was rendered for this portion, because such excess had not been authorized by a vote of the electorate as required by law.

2. The court also gave judgment in favor of plaintiff in error on the second cause of action for the one mill levied therein under chapter 13, S. L. 1925, without a vote authorizing such additional levy.

3. On the third cause of action the court gave judgment in favor of the defendant in error, county treasurer, for the 5.78 mills levied for the purpose of paying the interest and creating a sinking fund for the waterworks bonds which had been issued by the city of Blackwell.

4. On the fourth cause of action the defendant confessed judgment and judgment

was thereupon rendered in favor of plaintiff in error.

5. On the fifth cause of action the defendant confessed judgment for a portion of the amount sued for, and plaintiff in error thereupon dismissed as to the remainder, and judgment was rendered in favor of plaintiff in error accordingly, and thus causes of action 4 and 5 are thereby dropped out of the case.

From the judgment rendered in favor of plaintiff in error on the first and second causes of action, defendant in error, county treasurer, through the county attorney, has appealed and filed petition in error. And from the judgment in favor of defendant in error and against plaintiff in error, railway company, on the third cause of action, the plaintiff in error has appealed and filed petition in error.

While the county attorney has not briefed the questions involved in the first and second causes of action, yet, they being public questions, questions in which every county in the state may become interested and involved, we shall not treat them as abandoned, but shall formally pass upon them.

As to the issues involved in the first cause of action, in which as above stated judgment was rendered in favor of plaintiff in error, because the excess levy had not been authorized by a vote as required by law, we find no reason for disturbing the judgment, and the judgment in that regard is affirmed.

As to the judgment in favor of plaintiff in error on the second cause of action, for the one mill levied under purported authority of chapter 13, S. L. 1925, the court, in its finding that such levy was made without a vote of the people authorizing such levy, is sustained by the agreed statement of facts. Also, the court evidently treats said chapter 13, S. L. 1925, as invalid. We must also sustain the court's judgment in this regard, for section 1 of said chapter, after providing that the board of county commissioners may use any or all of the unassigned portions of the sinking fund of the county derived from penalties, interest, and forfeitures, provides also:

"And in addition thereto (the board of county commissioners) is authorized to make and enter a levy of not to exceed one mill of tax in any one year, and under the existing laws such tax shall be annually added to the funds herein provided for."

The title of the act is as follows:

"An act amending chapter 86, Session Laws of Regular Session of 1923, granting power to the board of county commissioners, district judge, and county judge of any county to use the sinking fund of the county derived from penalties, interests or forfeitures accrued or to accrue as penalties on delinquent taxes for the purpose of erecting a county courthouse, providing the method of procedure therefor, repealing all acts in conflict therewith."

This title nowhere remotely intimates that the board of county commissioners is going to be authorized to make an additional one-mill levy, and is therefore clearly violative of section 57, art. 5, of the Constitution, which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

No one reading the title to this act would in the least expect to find authority for levying an additional one-mill tax, hence the judgment of the trial court in this regard is affirmed. See State ex rel. Attorney General v. Johnson, 90 Okla. 21, 215 Pac. 945.

It is the judgment rendered against plaintiff in error on the third cause of action which constitutes the main contention in this appeal, and to which the argument is wholly directed. The real question involved in the third cause of action is whether a city of the first class, though not under a charter government, but owning a public utility, consisting of a waterworks plant, is authorized to levy an ad valorem tax to pay the interest on and create a sinking fund for outstanding bonds issued under section 27, art. 10, of the Constitution, for the purpose of constructing such waterworks plant, or whether such city, under the provisions of section 4507, C. O. S. 1921, is compelled to charge such water rates only as will pay the operating expenses of the plant, and pay the interest and create a sinking fund for the outstanding bonds, and whether it is compelled under such statutes to devote the accumulated surplus over and above the operating expenses of such plant to the payment of said interest and sinking fund, and is by said section prohibited from levying an ad valorem tax for such purposes. Said section 4507, C. O. S. 1921, reads as follows:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm or corporation by virtue of a franchise from said corporation, and every city containing a population of more than 2,000 inhabitants shall have the right

and power to acquire, own and maintain. within or without the corporate limits of such city, real estate for sites and rights of way for public utility and public park purposes, and for the location thereon of waterworks, electric light and gas plants, hospitals, quarantine stations, garbage reduction plants, pipe lines for the transmission and transportation of gas, water and sewerage, and for any plant for the manufacture of any material for public improvement purposes, public buildings, and for all such purposes shall have the power to exercise the right of eminent domain, either within or without the corporate limits of such city, and to establish, lay and operate any such plant or pipe line upon any land or right of way taken thereunder; and shall have and exercise the right to manufacture any material for public improvement purposes, and to barter. or exchange the same for other material to be used in public improvements in such city, or to sell the same to other cities for like purposes and for any or all such purposes, in order to raise means to carry out the same, shall have power to issue and sell bonds, bearing interest not to exceed six per centum per annum, maturing in 25 years, and redeemable at will in not less than ten years; and whenever any such public improvement shall have been constructed by means derived from the sale of bonds, as above provided, it shall be the duty of such city to fix the rates charged for service to the public, as nearly as practicable, so as to pay the interest and not less than three per centum per annum on the principal of such bonds in excess of the expenses of maintenance and operation; Provided, that whenever it shall be found impracticable to issue bonds as above provided for any improvement deemed by such city necessary for the public welfare, without increasing the total indebtedness of such city beyond the constitutional limit, it shall be lawful for such city to lease at a stipulated rental any public improvement or utility from any person, firm or corporation which will contract to furnish the same. Provided, further, that any such rental contract shall reserve to such city the option to purchase such improvement or utility in future."

It will be observed that the foregoing. section specifically authorizes municipal corporations of the state to engage in any business or enterprise which may be engaged in by a person, firm, or corporation, and that every city containing a population of more than 2,000 (within which class the city of Blackwell stands) is expressly given the power to exercise the right of eminent domain even beyond the corporate limits of the city in order to carry out the purposes of such public utilities (in the present case a waterworks plant).

It must be observed that the foregoing section expressly provides as follows:

"And shall have and exercise the right to manufacture any material for public improvement purposes and to barter or exchange the same for other material to be used for public improvements in such city, or to sell the same to other cities for like purposes and for any or all such purposes, in order to raise means to carry out the same, shall have power to issue and sell bonds bearing interest, not to exceed six per centum per annum maturing in 25 years. * * *"

Again we call attention to the fact that the foregoing section expressly authorizes cities of the class here involved to engage in any business enterprise which a private person or corporation may engage, but further provides:

"And shall have and exercise the right to manufacture any material for public improvement purposes and to barter or exchange the same for other material to be used in public improvements in such city or to sell the same to other cities for like purposes."

These provisions are no more than a reenactment of the right conferred by section 6, art. 18, of the Constitution, which provides:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

It is true that said section 4507, supra, contains the provision, to wit:

"It shall be the duty of such city to fix the rates charged for service to the public as nearly as practicable so as to pay the interest and not less than three per centum per annum on the principal of such bonds in excess of the expenses of maintenance and operation."

But the bonds authorized by said section 4507 and the bonds involved in the present case were issued under section 27, art. 10, of the Constitution, which provides as follows:

"Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section 26, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city; Provided, that any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such in-

debtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereon within 25 years from the time of contracting the same."

Said section of the Constitution has been specifically held to be self-executing by this court in the following case: State ex rel. Edwards v. Millar, 21 Okla. 448, 96 Pac. 747, which has been adhered to since the opinion in same was rendered.

It must be seen also that the foregoing section of the Constitution not only confers the express power to do so, but specifically makes it the duty of the city issuing bonds under such provision to provide at or before the issuance of such bonds for a tax sufficient to take care of the interest and sinking funds for such bonds. And in Town of Walters v. Orth, 59 Okla. 99, 158 Pac. 352, this court specifically held that bonds issued under authority of section 27, art. 10, supra, were void unless provision had been made for levying the tax sufficient to pay the interest on and create a sinking fund for such outstanding bonds, at or before the time of issuance of same. Therefore, it must be seen that the city of Blackwell (the city involved in this case) not only had authority to levy a tax sufficient to take care of the interest and sinking fund on the bonds involved here, but was specifically charged by said section of the Constitution with the duty to levy such tax.

And when bonds are issued in strict compliance with said section 27, art. 10, and provision is made for the levy of a tax sufficient to take care of the interest and sinking fund, such provision enters into and becomes a part of the contractual obligation of the city to the purchasers and owners of such bonds, and the Legislature is prohibited by article 2, section 15, of the Constitution from impairing such obligation.

We also call attention to the provision that where bonds are issued under authority of section 26, article 10, of the Constitution, the city issuing same must provide for the levy of a tax sufficient to pay the interest on and create a sinking fund for the bonds thus issued.

And section 28, article 10, of the Constitution further emphasizes the manifest intention of the framers of the Constitution to require cities and other municipalities issuing bonds under any provision of the Constitution to make provision for levying a tax

sufficient for the interest and sinking fund for such bonds.

It is quite obvious throughout the provisions of the Constitution, all provisions relating to the issuance of municipal bonds, that the market and sale of such bonds and the stability of such market should depend upon the certainty of a tax being levied sufficient to pay the interest and create a sinking fund, and not upon the uncertainty of a city or other municipality being able to charge and collect rates sufficient to pay the interest and create a sinking fund, and thus the city of Blackwell not only had authority to levy the tax in question in this case, but was specifically charged with the duty to levy such taxes, and hence such levy, the levy involved in the third cause of action herein, was a valid levy, there being no contention made that the levy in question was greater than necessary to pay the interest and sinking fund on the bonds in question.

Even section 4507 of the statutes, supra, does not attempt to expressly deny the authority of a city to levy the tax required by section 27, art. 10, of the Constitution to be levied. It is true that said section 4507, supra, provides that a city shall charge rates as nearly as practicable sufficient to pay the operating expenses and pay the interest on and create a sinking fund for the outstanding bond issue. But, as we view this case, the amount of rates which a city may charge for its water is not really involved. It is the question of the authority of the city to levy the tax complained of that is really involved, that is the real question, and the plaintiff in error has not shown itself to have the authority or capacity to maintain a suit in reference to the rates charged for water by the city of Blackwell. Therefore, the mere question of the amount of rates which may be charged is not actually involved. Neither the Constitution nor statutes specifically prescribe what rates may be charged for a municipally owned utility, nor to what purpose the profits derived therefrom must be appropriated. Hence, said section 4507 is not decisive, nor even applicable to the question of the validity of the tax levy made for the purpose of paying the interest on and creating a sinking fund for the waterworks bonds.

We must conclude, therefore, that the levy involved in plaintiff in error's third cause of action was a valid levy, and that the judgment of the trial court should in all things be affirmed.

Affirmed.

BRANSON, C. J., and PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 37 Cyc. p. 969. (2) 36 Cyc. p. 1044. (3) 43 C. J. p. 183, §180. (4) 43 C. J. p. 421, §552. (5) 28 Cyc. p. 1663. (6) 28 Cyc. p. 1667.