### ZACHARY et al. v. CITY of WAGONER et al.

No. 19479. Opinion Filed Sept. 30, 1930.

Rehearing Denied Oct. 21, 1930.

E. L. Kirby, for plaintiffs in error.

Watts & Broaddus and Shirk, Danner & Phelps, for defendants in error.

ANDREWS, J. The parties to this appeal appear in the order in which they appeared in the trial court. They will be hereinafter referred to as plaintiffs and defendants, respectively.

The plaintiffs filed in the district court of Wagoner county a petition seeking to enjoin the execution of a contract. No injunction was granted and the contract was executed while the suit was pending. After service of summons and the execution of the contract they filed an instrument denominated a "Supplemental and Amendment to Plaintiff's Petition," seeking to enjoin the payment of money under the contract. The defendants filed a demurrer to the petition as amended and supplemented which was based on three grounds: First, that the plaintiffs did not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendants; second, that the plaintiffs had no legal capacity to sue: third, there was a misjoinder of plaintiffs. The trial court overruled the demurrer as to the second and third grounds and sustained it as to the first ground. The plaintiffs stood on the petition as amended and supplemented, and the trial court dismissed the action. An appeal was taken from that judgment.

The only question before this court is the sufficiency of the petition as amended and supplemented. The material allegations thereof necessary for consideration by this court are, in substance, as follows:

That the city of Wagoner is the exclusive owner and operator of an electric light and power plant located in that city, and is engaged in the production and sale of electric current and power to the inhabitants of that city; that in the fiscal year beginning July 1, 1927, the city officials of that city, without the assent of three-fifths of the voters thereof voting at an election held for that purpose, and without the assent of a majority of the qualified, property taxpaying voters of such city voting at an election held for that purpose, and without any provision being made for the collection of an annual tax in addition to the other taxes provided for by the Constitution sufficient to pay the interest on the indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same, entered into a contract for the purchase by said city of Diesel engines with the necessary alternators, exciters, switchboards, appliances, appurtenances and other equipment, for the purpose of providing said city with a complete electric light plant, including installation thereof, payment for said property and its installation to be made from the saving in the cost of operation of the said Diesel plant over the present steam plant, over a period of from 52 to 120 months. It is contended that the contract is illegal and void for the reason that the amount payable thereunder during the current fiscal year is not included within, but is in excess of the estimate and appropriation for the electric light plant during the current fiscal year; that the making of the contract is specifically prohibited by the laws of the state of Oklahoma, to wit:

Section 8638, C. O. S. 1921, and by certain provisions of the charter of said city, to wit, section 31, article 6, of said charter, which reads as follows:

"Neither the board of commissioners nor any officer or employee of the city shall have authority to make any contract involving the expenditure of public money, or impose upon the city any liability to pay money unless and until a definite amount of money shall have been appropriated for the liquidation of all pecuniary liability of

the city under such contract or in consequence thereof to mature during the period covered by the appropriation. Such contract shall be null and void as to the city for any other and further liability * * *"

—and section 15, article 14, of said charter:

"No contract shall be entered into by the board of commissioners until after the appropriation has been made therefor, nor in excess of the amount appropriated, and all contracts shall be made upon specifications. No contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the city clerk, and the expenses thereof charged to the proper fund liable for the payment of the same, and whenever the contracts charged to any fund equal the appropriation made therefor, no further contract shall be signed by the mayor or city clerk, the payment of which comes from such fund."

That the indebtedness sought to be created, together with other existing indebtedness, aggregates an amount exceeding 5 per centum of the valuation of taxable property in said city as determined by the last previous assessment of said property for state and county purposes; that the proposition was not submitted to the qualified, property taxpaying voters of said city as provided by section 27, article 10, of the Constitution; that no provision has been made for the payment of the principal and interest thereof, as provided by section 27, article 10, supra; that the proposition did not receive the assent of three-fifths of the voters voting at the election held for that purpose, as provided by section 26, article 10, supra; that the full legal title to the property attempted to be purchased was not vested in the city, and would not be so vested until the completion of the payment therefor, and that no specifications have been prepared covering the purchase, size, and dimension of said engine, and erection and installation thereof, as provided by section 16, article 14, of the charter of said city, which provides:

"All contracts of whatever character, pertaining to public improvements, or maintenance of public property of said city, involving an outlay of as much as $300 shall be based upon specifications to be prepared and submitted to and approved by the board of commissioners, and after approval by the board of commissioners, advertisements for the proposed work, or matter embraced in the said proposed contract shall be made inviting competitive bids for the work to be done, which advertisement shall be published in the official newspaper, if a daily, not less than five times, and if a weekly, in two issues thereof; and all bids submitted shall be sealed and shall be opened by the mayor in the presence of a majority of the board of commissioners, and shall remain on file in the office of the city clerk and be open to public inspection for at least forty-eight hours before any award of said work is made to any competitive bidder."

The prayer was that the city officials shall be enjoined from paying any money under said contract.

It is not necessary to determine all of the contentions made. It is axiomatic, under the law of Oklahoma, that a municipality must operate on the cash or 'pay-as-you-go" plan (Gentis v. Hunt, 121 Okla. 71, 247 Pac. 358), and that a municipality has no power to incur any indebtedness except when and as such authority is delegated by the Constitution or by valid legislative enactment (Byrum v. City of Shawnee, 83 Okla. 16, 200 Pac. 183). The limitation contained in section 26, article 10, supra, is operative for the reason that the indebtedness incurred did not receive the assent of three-fifths of the voters of the city voting at an election held for that purpose. The grant of power contained in section 27, article 10, supra, was not invoked for the reason that the proposition of incurring the indebtedness was not submitted to the qualified, property taxpaying voters of the city, and the property sought to be purchased was not to be owned exclusively by the city, but was to become the property of the city only upon the payment of the full purchase price with interest.

In the case of City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640, it was held:

"Where the Constitution confers the power to do a particular act and prescribes the means and manner of doing such act, such means or manner is exclusive of all others."

As we view it, there is but one question before the court, that is: Does the petition in this action state facts sufficient to show that an indebtedness, within the purview of the Constitution and laws of the state of Oklahoma, was created?

We are not unmindful of the rule followed in some jurisdictions that the purchase of property does not create an indebtedness if the purchase price is to be paid out of the income therefrom (Winston v. City of Spokane (Wash.) 41 Pac. 888; Faulkner v. City of Seattle (Wash.) 53 Pac. 365; Joliet v. Alexander (Ill.) 62 N. E. 861; East Moline v. Pope (Ill.) 79 N. E. 587, and other cases), but we cannot follow such holding. In our opinion, this is but another attempt to nullify and e v a d e the wholesome constitutional limitations

upon the power of municipalities to create indebtedness and to usurp powers never intended to be granted to municipal officers. The reasoning in support thereof is the ingenious argument by which such attempts have ever been supported. Under the decisions of this court and the Constitution and laws of Oklahoma, the agreement to pay for the material purchased creates an indebtedness no matter from what source the funds are to be derived from which the payment is to be made. Sections 26 and 27, article 10, supra, contain nothing that limits their application to indebtedness to be paid from funds derived from ad valorem tax levy. They are general in their terms and they will be applied by this court to all manner of indebtedness, no matter how created or from what source the indebtedness is to be paid. As well might a municipality contend that an indebtedness was not an indebtedness because it was to be paid from receipts from gross production tax or other source of income other than ad valorem taxation. We cannot give our approval to any such theory of the law.

There is nothing in City of Pawhuska v. Pawhuska Oil & Gas Company, 118 Okla. 201, 248 Pac. 336, contrary to this holding.

We have discussed the effect of section 6, article 18, of the Constitution, in Protest of Bliss, 142 Okla. 1, 285 Pac. 73, and what we there said is applicable herein. The provision authorizing municipalities to engage in business was not intended to and does not destroy constitutional limitations on the incurring of indebtedness nor extend the power to incur indebtedness. When engaged in such business the city is subject to such limitations.

While section 6, article 18, supra, provides:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm or corporation by virtue of a franchise from said corporation"

—it is limited by sections 26 and 27, article 10, supra, and in attempting to apply section 6, article 18, supra, a municipality is governed by sections 26 and 27, article 10. Section 6, article 18, standing by itself, is not self-executing to the extent that it authorizes the incurring of indebtedness in violation of the provisions of sections 26 and 27, article 10, supra, but that section is self-executing when taken in connection with section 27, article 10, supra. Before the city of Wagoner may acquire property under the provisions of section 6, article 18, for the purpose of engaging in business or enterprise by reason of which it becomes indebted, it must conform with the provisions of either section 26 or 27, article 10, of the Constitution.

"Constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." State ex rel. Reardon v. Scales, 21 Okla. 683, 97 Pac. 584.

This court, in Protest of Bliss, supra, said:

"The intention and plain effect of the provisions contained in sections 26 and 27, article 10, of the Constitution is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of each year; and any liability sought to be incurred by contract, expressed or implied, executed or executory, in excess of such current revenue, on hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required."

That rule is applicable here. The municipal officers of the city of Wagoner are without authority of law to contract indebtedness which is to be a charge against that municipality or any of its funds or property after the expiration of the fiscal year in which the contract is made, without the assent of the voters thereof, and the fact that the indebtedness is contracted for public utility purposes does not change the rule. If they could create a charge against the light plant profits for longer than the current year, they could do so for a hundred years. They have no such authority under our law.

If the city of Wagoner desires to purchase the property sought to be purchased, it may submit the question to the qualified, property taxpaying voters of the city, and upon the approval thereof by a majority thereof the city may make the purchase without regard to any constitutional limitation, under the provision of section 27, article 10, of the Constitution. That section is placed in our Constitution for a distinct purpose. This court will not destroy the effect of that section by saying that municipal officers may evade its force of purchasing equipment for a public utility to be paid for out of the saving to the munic-

ipality from the use of the equipment so purchased.

The trial court was in error in sustaining the demurrer to the petition as amended and supplemented. The cause is reversed and remanded to the trial court with directions to overrule the demurrer, and to take such further action as is not inconsistent with this opinion.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, RILEY, CULLISON, and SWINDALL, JJ., concur. HEFNER, J., absent.