McCURTAIN COUNTY EXCISE BOARD,
Plaintiff in Error,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, a Corporation,
Defendant in Error.

No. 38594.

Supreme Court of Oklahoma.
June 2, 1959.

Lewis T. Martin, County Atty. of Mc-Curtain County, Idabel, for plaintiff in error.

G. E. Bailey, St. Louis, Mo., Franklin & Harmon, Oklahoma City, for defendant in error.

Amici Curiae.

Harry Johnson, Oklahoma City, for Oklahoma Education Ass'n.

Charles B. Duffy, Ponca City, for Independent School Dist. Number 71 of Kay County.

C. H. Rosenstein, Tulsa, for Independent School Dist. Number 1 of Tulsa County.

W. A. Lybrand, Oklahoma City, for Independent School Dist. Number 89 of Oklahoma County.

Richard Kane, Bartlesville, for Independent School Dist. Number 30 of Washington County.

Martin E. Dyer, Ardmore, for Independent School Dist. Number 19 of Carter County.

A. Camp Bonds, Muskogee, for Independent School Dist. Number 20 of Muskogee County.

John M. Luttrell, Norman, for Independent School Dist. Number 29 of Cleveland County.

F. A. Petrik, Broken Arrow, for Independent School Dist. Number 3, Tulsa County.

Loeffler & Allen, Bristow, for Independent School Dist. Number 33 of Creek County.

H. I. Aston, McAlester, for Independent School Dist. Number 80 of Pittsburg County.

Hoel & Horton, Stillwater, for Independent School Dist. Number 16 of Payne County.

George E. McKinnis, Jr., Shawnee, for Independent School Dist. Number 93 of Pottawatomie County.

James M. Wilson, Enid, for Independent School Dist. Number 57 of Garfield County.

WELCH, Justice.

The school district involved voted an additional emergency levy of not to exceed 5 mills pursuant to the provisions of the Constitution of Oklahoma, Article 10, Section 9, Subdivision (d), adopted as an amendment by referendum vote of the people on April 5, 1955.

When the school district budget for the current year was approved the Excise Board, in addition to other authorized levies, made a levy of the full additional 5 mills, pursuant to this constitutional provision and pursuant to the limit voted and approved by the electors of the district.

Defendant in error protested the legality of the levy of this additional 5 mills, and this appeal presents the validity of such levy.

Protestant does not assert any illegality in the voting, or in the election procedure, but assails the validity of the levy and asserts that such additional 5 mills levy cannot legally be ·made because the school district had on hand a cash surplus at the end of the last fiscal year.

As to the facts, and insofar as they might be material, this 5 mills levy will raise for the school district approximately $12,000. At the commencement of the fiscal ycar the school district had a cash surplus of approximately $49,000. For the school district there was levied the 5 mills tax referred to in subdivision (a), and the 15 mills provided by subdivision (c) of Section 9, Article 10 aforesaid, and the voted additional 5 mills levy here under attack, for an aggregate levy of 25 mills.

In preparing its budget for the fiscal year, the stated estimated needs of the fiscal year demonstrated that in order to finance such estimated needs and the appropriation therefor it would require the cash surplus of $49,000 and the proceeds of all of the aggregate levies of 25 mills referred to in subdivisions (a) (c) and (d)

of the Section of the Constitution above referred to.

The result of the decision of the Board of Tax Review sustaining the protest was to reduce the aggregate appropriations of the school district for the fiscal year by approximately $12,000.

The protestant argues that with the $49,000 cash surplus the school district should not be permitted to vote and to levy the final and extra or emergency 5 mills. It is argued that the $12,000 to be raised by such additional levy was not needed on account of the existence of the cash surplus.

The constitutional provision under which this 5 mills levy was voted reads as follows:

"(d) In addition to the levies hereinbefore authorized, school districts may make an emergency levy in an amount not to exceed five (5) mills on the dollar valuation of the taxable property in such district when approved by a majority of the electors of the district voting on the question at an election called for such purpose. This emergency levy shall provide only sufficient additional revenue to meet the need for the district each fiscal year. Need shall be the average daily attendance of all pupils for the preceding year, plus the average annual increase, if any, for the preceding three (3) years, multiplied by the per·capita cost index minus the legal current expense in the school district for the preceding year. The per capita cost index is set at Two Hundred Fifty Dollars ($250.00) for the fiscal year ending June 30, 1956, and thereafter shall be increased or decreased by the State Board of Education in proportion to the increase or decrease in the per capita income of Oklahoma citizens, unless otherwise provided by law."

Protestant does not contend that this 5 mills levy or the proceeds thereof, $12,000, is excessive when measured by the formula set out in this quoted provision of the Constitution, nor that such sum produced any excess above the annual budget, but does contend that the amount was not needed because of the cash surplus.

The record contains no evidence as to the details of the expenditure purposes which made it necessary to estimate and to appropriate such a sum for the fiscal year as to require all the proceeds of this aggregate 25 mills tax levy plus the $49,000 cash surplus to finance the same. Since no attack is made upon any expenditure purpose set up in the estimate of needs, or the requested appropriations therefor, it might be assumed they were all legitimate and valid. Therefore it is difficult to see how protestant could contend that $12,000 of such aggregate appropriation was not actually needed for the estimated expenditure purposes of the school district. It is not contended that any item of such expenditure purpose was illegal.

However, in view of the ground of protest here presented, and confining our decision to the protest presented, the provisions of the Constitution above quoted would seem to make it unnecessary for us to speculate as to what actual need or necessity the school district had for this $12,000, or to substitute our judgment or our view in place of the conclusion of the governing body and voters of the school district as to whether there was any emergency or any need for this extra levy.

This quoted constitutional provision specifies the conditions on which this levy of up to 5 mills may be made. Those conditions might be stated as (1) when the electors of the district have voted for it at a proper election, (2) when the voted levy "shall provide only sufficient additional revenue to meet the need for the district" for the fiscal year, and (3) the condition or provision that:

"need shall be the average daily attendance of all pupils for the preceding year, plus the average annual increase, if any, for the preceding three (3) years, multiplied by the per capita cost index minus the legal current expense in the school district for the preceding year."

The subsection then specifically defines or sets out what is "the need per capita cost index." Thus it is provided specifically that the word "need" means a need as calculated by proper application of the figures of the formula specified in the subsection. Consequently the "need" that we here deal with is a "formula need" to be tested only by the prescribed formula. It is not such a presently existing "emergency" or "need" in fact or for some special expenditure, as may be determined by existing physical or financial facts outside of the prescribed formula. That is, it is not such a "need" as the school district may determine in the first place as a fact, which may be reviewable as a fact question by the Court of Tax Review, or by this court on appeal. It may be simply stated that the "need" of the school district or the limit of "need" as that word is used in this subdivision means nothing more nor less than the mathematical result of the application of the figures of the specifically provided formula.

There is logic in the reasoning and contention of protestant that a school district ought not to vote this particular 5 mills levy or any part of it unless it is actually and presently needed by the school district, but the constitutional provision does not apply that test to the right or power of the district to vote and to authorize up to 5 mills, if required to finance the current budget. The only test which the law applies, and the only test which this court may apply, is whether this levy comes within the provisions of need as set out in this subsection (d). If the levy goes beyond that it is to that extent illegal, but if the voted levy up to 5 mills is within that formula, then it is legal by the very provisions of this law and we must so hold.

█ The rule is applicable here which we announced in paragraph 2 of the syllabus in Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447, 448, as follows:

"In construing constitutional provisions, the courts should give words appearing therein their plain, natural, and ordinary meaning"

Our duty in construing a constitutional provision is emphasized by the holding in the 5th and 6th paragraphs of the syllabus in Shaw v. Grumbine, 137 Okl. 95, 278 P. 311, as follows:

"The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and, when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.

"To get at the thought or meaning expressed in a statute, a contract, or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted and neither the courts nor the Legislature have the right to add to it or take from it."

Also applicable is the holding in paragraph 4 of the syllabus in Zachary v. City of Wagoner, 146 Okl. 268, 292 P. 345, 346, as follows:

"Where the Constitution confers the power to do a particular act and prescribes the means and manner of doing such act, such means or manner is exclusive of all others. City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 35 A.L.R. 872."

█ It would inhere in this latter rule that if the constitutional provision sets out the conditions or states the formula under which a particular act may be performed, that the same is exclusive, and no further test or condition may be applied to test the power to so act, or the validity of such act, performed within such stated conditions and formula.

Since the protest seeks to apply an additional test or an additional condition (the existence of a surplus $49,000) not included in the conditions of the law or the tests which may apply to the levy under the law, and since the protestant does not contend that the 5 mills levy exceeds the formula need set up in the law nor the budget requirements of the year, the protest must be denied.

The judgment appealed from is reversed and the protest is denied.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, J., concurs in result.